## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA,**  :

                                        :            **3:15-CR-0173**

**    v.**                                    :        **(JUDGE MANNION)[1]**

**DENNIS COUVERTIER,**          :

            **Defendant**      :

## MEMORANDUM

Pending before the court is the motion to suppress evidence, (Doc. 43), filed by defendant Dennis Couvertier through his counsel. The defendant allegedly possessed with intent to distribute cocaine on three dates, possessed a firearm in connection with a drug trafficking crime and was a drug user in possession of a firearm. The defendant seeks to suppress the evidence seized from the search of his residence during the execution of a search warrant on the grounds that the affidavit failed to establish probable cause for the search since it lacked sufficient facts to infer that he was a drug dealer and since no officer acting in good faith could rely on the warrant. The gist of the defendant's argument is that the entirety of the search and seizure of evidence in his residence as well as his subsequent statements during his custodial interrogation were in violation of the Fourth Amendment based on the fruit of the poisonous tree doctrine. Further, the defendant requests a

_____

[1]This matter was reassigned to the undersigned on September 15, 2016.

*Franks* hearing if the court finds that the affidavit established probable cause for the search. For the reasons discussed below, the motion will be **DENIED** without the need for a *Franks* hearing.

## I.   FACTUAL BACKGROUND

Defendant was charged with three counts of distribution of cocaine, in violation of 21 U.S.C. §841(a)(1), regarding incidents on June 3, 2015, June 10, 2015 and June 12, 2015. (Doc. 1). The facts pertaining to each alleged drug sale will be detailed separately.

### A. June 3, 2015

On June 3, 2015, officers from the Kingston Police Department ("KPD") and the Luzerne County Drug Task Force ("LCDTF") met with a confidential informant ("CI") to arrange a controlled buy of cocaine from a person identified as Mahmoud Elbattah. Several calls between the CI and Elbattah were made and they set up a meeting. Elbattah told the CI that "'Dennis' known to the CI and Police as being Elbattah's cocaine supplier," would be delivering the cocaine to Elbattah and the CI. Prior to the transaction, the CI and the CI's vehicle were searched by the police, and no contraband was found. Detective Ed Palka conducted surveillance at the residence of Elbattah at the American Legion in Swoyersville, Luzerne County, and observed Elbattah enter a white/silver BMW driven by a black male. The black male and Elbattah then

traveled to meet with the CI at the designated location in Swoyersville and Elbattah called the CI and told him he was on his way. Officers conducting surveillance at the Swoyersville location were able to observe Elbattah exit the vehicle. Elbattah then met with the CI and the CI provided Elbattah with $240 in U.S. currency. "Elbattah wanted the CI to come to the vehicle to meet 'Dennis' but the CI refused." Elbattah then took the $240 and returned to the BMW with the black male inside. A short time later, Elbattah exited the vehicle, walked directly to the CI and placed the cocaine in the CI's vehicle. The CI then left the area. Elbattah left the area on foot and began walking toward his residence. Detective Rich Kotchik followed the black male in the BMW to the area of the Vaughn Street Bar in Luzerne Borough. The black male parked the vehicle behind the bar and exited the vehicle.

After the transaction, the CI met with investigators. The CI turned over to investigators the suspected cocaine which the CI had purchased from Elbattah as well as the recorders which were provided to him. The suspected cocaine was field tested by Kotchik with positive results for the presence of cocaine. Investigators were later able to identify the black male driving the BMW vehicle as Dennis Couvertier and his driver's license indicated that he lived at Rear 347 Vaughn Street, Luzerne, PA.

On June 9, 2015, Palka conducted surveillance at Rear 347 Vaughn Street and saw Couvertier enter and exit the residence numerous times.

3

## B. June 10, 2015

On June 10, 2015, officers from the KPD and the LCDTF used the same CI to arrange a controlled purchase of cocaine from Elbattah and his drug supplier. Before the drug sale, officers searched the CI and his vehicle and no contraband was discovered. The CI made a series of recorded telephone calls to Elbattah and he arranged to purchase a specific amount of cocaine from Elbattah for money. "The CI inquired with Elbattah about meeting 'Dennis' and Elbattah agreed." The CI was then given money by Kotchik as well as audio and video recorders.

Detective Palka conducted surveillance near Couvertier's Vaughn Street residence in Luzerne Borough and observed Couvertier exit his second floor apartment located at 347 Rear Vaughn Street. Couvertier walked over to his brother's house at 106 Sly Street and remained outside.

Detective Kotchik then followed the CI to Carpenter Street in Luzerne Borough, where the CI was told by Elbattah on his cell phone to pull over. Elbattah was already parked on Carpenter Street. Kotchik saw the CI meet with Elbattah and hand Elbattah the cash. Elbattah instructed the CI to go to Heffron's Gas Station on Union Street in Luzerne and to wait there for Elbattah to return. Elbattah then returned to his vehicle and traveled directly to 347 Vaughn Street and pulled into the back parking lot. While he was waiting, "the CI contacted Det[ective] Kotchik and advised him that Elbattah

4

was going to meet Dennis and get the cocaine that the CI wanted." At this time, another officer saw Couvertier get a phone call on his cell phone. Palka then saw Elbattah walking up the steps to Couvertier's apartment at 347 Rear Vaughn Street and knock on the door of the apartment. Elbattah then turned around and saw Couvertier standing in front of his brother's house on Sly street. Couvertier walked back over to his Vaughn Street residence. Couvertier used a key to open the front door to the apartment and he along with Elbattah and another individual entered the apartment. Approximately five minutes later, Palka saw Elbattah exited the apartment and then Kotchik observed him drive to Heffron's gas station, where Elbattah met with the CI. Elbattah gave the CI the requested amount of cocaine.

After the transaction, the CI met with Kotchik and turned over the suspected cocaine and recording devices. The suspected cocaine field tested positive for the presence of cocaine.

**B. June 12, 2015**

On June 11, 2015, officers Palka and Kotchik of the KPD/LCDTF executed an application for a search warrant for Couvertier's residence located at the rear second floor apartment, 347 Rear Vaughn Street, Luzerne County, Pennsylvania. (Doc. 47-1). They attached their 3-page affidavit of probable cause to the application. The search warrant application was approved by the Luzerne County District Attorney. State Magisterial District

Judge ("Magistrate") Paul Roberts of Kingston, Luzerne County issued the search warrant on the same date.

According to the government, (Doc. 47, at 5-6), KPD/LCDTF officers met on June 12, 2015 to prepare for the execution of the search warrant, and to serve arrest warrants on Elbattah and Couvertier. Officers began to conduct surveillance at Couvertier's Vaughn Street residence and as they were about to serve the search warrant, a white male and white female were seen exiting the residence. The two individuals were known by local officers to be drug users. Subsequently, based on Couvertier's statements made after his arrest and during custodial questioning, officers discovered that Couvertier had sold $30 worth of cocaine to the two stated individuals. This drug sale is the basis for the §841(a)(1) charge in Count 3 of the Indictment.

When officers entered Couvertier's residence, they encountered Couvertier in his bedroom with his back to them. The government then states:

> Couvertier reached into a dresser drawer and then laid down on a bed, with his right hand underneath his chest. Investigators ordered Couvertier to get on the ground and to show his hands, but Couvertier refused to comply. After refusing several more commands by the police, Couvertier was eventually secured by investigators. On the bed where Couvertier had been lying, investigators found a loaded .45 caliber handgun. In the open dresser drawer into which Couvertier had reached, investigators found a loaded 9mm handgun, $2916 in cash and forty three rounds of .45 caliber ammunition. A digital scale containing suspected cocaine residue was located on top of the dresser. According to police reports, Dennis Couvertier's brother, Robert Couvertier, was located in the living room. After being handcuffed, Dennis Couvertier stated, "the guns are mine, Robert has nothing

to do with this."

The BMW vehicle which had been used by Couvertier during the surveillance by officers was parked outside his residence. The keys to this vehicle were found on top of the dresser in Couvertier's bedroom.

After his arrest, Couvertier was taken to the Kingston Police Department. He was advised of his *Miranda* rights and waived his rights. He then agreed to be interviewed by the officers. During the custodial interview, Couvertier admitted to possessing the two firearms found in his residence, to selling a bag of cocaine for $30 to the two known drug users who were observed leaving his residence immediately before the search warrant was executed, and to being an illegal controlled substances user. (Id. at 6-7).

## II.   PROCEDURAL HISTORY

On August 18, 2015, a federal grand jury charged Couvertier with a five-count Indictment for the following charges: three counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1), (Counts 1-3); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c), (Count 4), and; one count of a drug user in possession of a firearm, in violation of 18 U.S.C. §922(g)(3), (Count 5). Couvertier had his initial appearance and arraignment on August 27, 2015 and entered a plea of not guilty to the charges. (Doc. 10). Couvertier was then

ordered detained pending his trial. (Doc. 11).

On October 14, 2016, Couvertier filed a motion to suppress physical evidence and statements, (Doc. 43), with an exhibit and a supporting brief, (Doc. 44). After being granted an extension of time, the government filed a brief in opposition to the motion with the search warrant application and affidavit of probable cause attached as an exhibit on November 21, 2016. (Doc. 47). On January 7, 2017, Couvertier filed a reply brief also after he received an extension of time. (Doc. 50). Couvertier seeks to suppress all of the evidence seized from the search of his residence and his statements made during his custodial interrogation.

## III.    LEGAL STANDARD

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Accordingly, the Fourth Amendment lays out four requirements of a valid warrant. The warrant must: 1) be based on probable cause; 2) be supported by a sworn affidavit; 3) describe particularly the place of the search; and 4) describe particularly the persons or things to be seized. Groh v.

Ramirez, 540 U.S. 551, 557 (2004).

"The Fourth Amendment requires that a search warrant be supported by probable cause, and '[e]vidence seized pursuant to a search warrant that is not so supported may be suppressed.'" U.S. v. Rivera, 524 Fed.Appx. 821, 825 (3d Cir. 2013) (citation omitted).

The district court conducts only a deferential review of the initial probable cause determination made by the magistrate regarding a search. U.S v. Stearns, 597 F.3d 540, 554 (3d Cir. 2010) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317 (1983)). "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" Id. (citation omitted).In order for the reviewing court to make this determination, it "must consider the totality of the circumstances, 'and need not conclude that it was more likely than not' that the evidence sought was at the place described." Rivera, 524 Fed.Appx. at 825 (citation omitted). "If a substantial basis exists to support the magistrate's probable cause finding, [the court] must uphold that finding ...." Stearns, 597 F.3d at 554. In evaluating a search warrant application, "the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (citation omitted). A search warrant can be issued even when supported by an affidavit which does not contain direct evidence linking

9

the crime with the place to be searched. Id. "Probable cause can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'" Id. (citation omitted). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." U.S. v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993) (citation omitted).

Generally, "the burden of proof is on the defendant who seeks to suppress evidence." U.S. v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). "However, once the defendant has established a basis for his motion, [], the burden shifts to the government to show that the search or seizure was reasonable." Id. (citation omitted).

The court's "role is not to make [its] own assessment as to whether probable cause existed", "[r]ather, [it is] constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made." Jones, 994 F.2d at 1057. Thus, the district court's limited role is to determine if the four corners of the affidavit in support of the search warrant provided "the magistrate judge with a substantial basis on which to conclude that evidence of a crime would be found in the defendant['s] residence[]." Id. at 1055.

The exclusionary rule calls for the suppression of evidence obtained during an unconstitutional search or illegal seizure. In United States v. Leon,

10

468 U.S. 897, 916, 920 (1984), the Supreme Court recognized that the goals of deterrence would not be furthered "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Hence, the "good faith exception" to the exclusionary rule arose from *Leon*. The Supreme Court later clarified that the exclusionary rule can only be triggered where "police conduct" is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 136, 129 S. Ct. 695, 697 (2009).

"The independent source doctrine serves as an exception to the exclusionary rule and permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" U.S. v Stabile, 633 F.3d 219, 243 (3d Cir. 2011), cert. denied, 565 U.S. 942, 132 S.Ct. 399 (2011) (citations omitted).

## IV.   DISCUSSION

### A.   Motion to Suppress

This court has jurisdiction over the motion to suppress under 18 U.S.C. §3231.

In his motion to suppress, defendant argues that the affidavit in support of the search warrant application is deficient and lacked probable cause for

the judge to issue the warrant. Specifically, he points out that the affidavit did not state that anyone ever saw him with cocaine or participate in one of the drug transactions, and that it did not reference any communications with him. Defendant states that the allegations regarding "Dennis" as being Elbattah's cocaine supplier are merely conclusory, and that the only allegations that "Dennis" was the supplier were made by the CI who claimed that Elbattah referred to "Dennis" as his supplier. He also states that the CI never met "Dennis" and there is no explanation why the meeting did not occur even though the affidavit stated on June 10 that Elbattah agreed to let the CI meet "Dennis." Further, defendant states that the affidavit is silent as to the background regarding the credibility of the CI.

The Fourth Amendment "protection is triggered only if the state invades an area in which the person has a 'constitutionally protected reasonable expectation of privacy.'" U.S. v. Donahue, 764 F.3d 293, 298 (3d Cir. 2014) (citations omitted). Fourth Amendment rights are "personal" and the defendant "bears the burden of proving not only that the search ... was illegal, but also that he had a legitimate expectation of privacy in [the rear second floor apartment at 347 Vaughn Street]." Stearns, 597 F.3d at 551 (citations omitted). "Fourth Amendment standing 'requires that the individual challenging the search have a reasonable expectation of privacy in the property searched ... and that he manifest a subjective expectation of privacy in the property searched[.]'" Kennedy, 638 F.3d at 163 (quoting U.S. v. Baker,

221 F.3d 438, 441 (3d Cir. 2000)). "[A] reasonable or legitimate expectation of privacy must have 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Id. (citations omitted). The question of whether a person has legitimate expectation of privacy "turns on two specific questions: '(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances.'" Donahue, 764 F.3d at 298-99 (citation omitted).

During the relevant time, defendant Couvertier was observed going into and coming out of the apartment. He was also seen with the key to open the door to the apartment. His address was checked by the officers from his Pennsylvania driver's license. When the officers entered the apartment on June 12, 2015 defendant had his possessions in the apartment and was on a bed. Thus, he excluded others from the apartment, used it as his living quarters, and slept therein. "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [his] right to exclude." Kennedy, 638 F.3d at 164 (citations omitted).  As such, Couvertier had a reasonable expectation of privacy in the apartment at 347 Vaughn Street and the search of the apartment must therefore be supported by probable cause.

The government contends that the search of the apartment was

13

supported by probable cause, or, good faith reliance on a validly issued search warrant. The probable cause inquiry "is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" Donahue, 764 F.3d at 301 (citation omitted). The court evaluates "the events which occurred leading up to the ... search, and then ... [decides] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to ... probable cause." Id. (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–62 (1996)).

The court finds that there was a "fair probability that contraband or evidence of a crime" would be found in the second floor rear apartment at 347 Vaughn Street and thus, there was probable cause for the search. Id. (citation omitted). "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." Stearn, 597 F.3d at 558. The search warrant in this case was amply supported by probable cause. As detailed in the affidavit, the CI met with Palka and Kotchik in May of 2015 and he stated that he had purchased cocaine from Elbattah. The CI also stated that Elbattah's cocaine supplier was "a black male by the name of Dennis." The CI indicated that Dennis lived at one of two addresses and then identified one address which later turned out to be defendant's and a second address which turned out to be the address of defendant's bother. The CI then stated that he gives money to Elbattah and that Elbattah goes to

see Dennis to get the cocaine. Later, Elbattah returns to the CI with the cocaine.

The investigation by the officers of the task force outlined in the affidavit corroborated the information which the CI provided demonstrating his reliability as well as credibility.

The controlled buys between the CI and Elbattah under the supervision of the drug task force officers, detailed above and below, provided a sufficient link showing that Couvertier was Elbattah's cocaine supplier and additional corroboration for the judge to make his probable cause determination. *See* Stearn, 597 F.3d at 556 (court found probable cause when informant's tip was corroborated by his subsequent controlled buy and that CI's reliability was corroborated by observations of officers). The CI had specifically identified "Dennis" as Elbattah's cocaine supplier and during the controlled buys observed by officers, Couvertier's involvement detailed in the affidavit indicates that the "he" to whom Elbattah was referring as his supplier was the defendant. Also, the task force officers conducted surveillance of the rear second floor apartment at 347 Vaughn Street and observed Couvertier entering and exiting the apartment as well as activities directly involving Couvertier, particularly the ones occurring on May 27, June 3 and June 10, 2015, which were consistent with a location where drugs were being stored and sold. *See* Gates, 462 U.S. at 243 n. 13 (Supreme Court noted that "seemingly innocent activity [might] bec[o]me suspicious in the light of the

initial tip"). Probable cause existed in this case to support the issuance of the search warrant since "based on a totality of the circumstances, 'there is a fair probability that ... evidence of a crime will be found in a particular place.'" Walker v. City of Wilmington, 360 Fed.Appx. 305, 312 (3d Cir. 2010) (citations omitted). As such, all of the circumstances in the affidavit established a fair probability to believe contraband would be found in Couvertier's apartment. Thus, Couvertier's contention that the search warrant for his apartment was not properly supported by probable cause lacks merit, and the court will deny his suppression motion. *See* Stearn, 597 F.3d at559-60 (citations omitted); Rivera, 524 Fed.Appx. at 825.

Moreover, "the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380 (1984) (citations omitted). Neither the evidence officers discovered during the search of Couvertier's residence nor the evidence obtained by Couvertier's statements after his arrest were products of unconstitutional conduct. Since the court finds that the search of Couvertier's apartment was not conducted in violation of the Fourth Amendment, his motion to suppress the post-arrest statements he made to officers during his custodial interrogation, under the "fruit of the poisonous tree" doctrine, will also be denied. Simply put, Couvertier's statements to officer's after the search of his residence are not

tainted since they are not fruits of a prior illegality.

While the court finds the search warrant valid, even if the search warrant had been found to be invalid, the "good faith exception" under *Leon* would apply. Under the good faith exception, suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." U.S. v. Williams, 3 F.3d 69, 74 (3d Cir. 1993). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization.'" U.S. v. Loy, 191 F.3d 360, 367 (3d Cir.1999) (quoting Leon, 468 U.S. at 922 n. 23). "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." U.S. v. Bratcher, 2014 WL 5089729, *9 (W.D.Pa. Oct. 9, 2014) (citations omitted). "[T]he good faith exception requires objectively, not subjectively, reasonable conduct." Id. (citing Leon, 468 U.S. at 919–20 & n. 20).

In this case, the task force officers endeavored to conduct a thorough investigation of the alleged cocaine distribution operation in Luzerne and acted in good faith in obtaining the search warrant. The search warrant application was vetted through the District Attorney's Office and was then reviewed and approved by an independent judicial officer, Judge Roberts. Judging the actions of the officers under an objective standard, the court finds that they reasonably relied on the well scrutinized warrant. *See* United States

v. Tracey, 597 F.3d 140, 153 (3d Cir. 2010) ("A reasonable officer would also have confidence in the validity of the warrant after presenting it and having it approved by a district attorney and the Magistrate Judge"). Moreover, the officers acted within the scope of the warrant, as discussed above.

No doubt there are four situations in which the good faith exception would not apply, namely:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Bratcher, 2014 WL 5089729, *9 (citing Hodge, 246 F.3d at 308).

Based on all of the circumstances averred in the affidavit and detailed herein, the officers sufficiently established that Couvertier was Elbattah's cocaine supplier and that there was a fair probability that evidence of his involvement in the drug transactions would be in his Vaughn Street apartment. Both Palka and Kotchik averred in their affidavit that they had received training in narcotic investigations from the PA State Police, the District Attorney's Officer, the PA Attorney General's Office, as well as the DEA. Thus, in light of the nexus between Elbattah, the suspected cocaine seller, and Couvertier, the suspected cocaine supplier, a reasonable officer would be justified in believing that a warrant to search Couvertier's apartment

18

would reveal evidence of his involvement in the illegal drug transactions and was supported by probable cause. The warrant in this case was not facially deficient and it did not fail to particularize the place to be searched or the things to be seized and thus, the officers could reasonably presume it to be valid. *See* Leon, 468 U.S. at 923. As such, "even if the search warrant was deficient, it was not lacking in indicia of probable cause and the good faith exception is applicable in this instance." Bratcher, 2014 WL 5089729, *9.

Moreover, the Supreme Court regards exclusion of evidence as an "extreme sanction" that "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule," which center on deterring police misconduct. Leon, 468 U.S. at 916, 918. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants "offends basic concepts of the criminal justice system." Leon, 468 U.S. at 907-08. This case does not warrant such a severe measure.

### B. Request for a *Franks* Hearing

In addition to his suppression motion, defendant Couvertier makes a request for a *Franks* hearing. Defendant contends that after his motion was filed his counsel reviewed the audio and video recordings of the drug buys which the government supplied to him via his discovery requests and that the recordings demonstrate "a number of the statements made in the affidavit [by

the officers] were false and misleading" and, that the statements were made "with reckless disregard for the truth." In fact, defendant's reply brief, (Doc. 50), mainly pertains to his request for a *Franks* hearing.

As mentioned, this court's review of the magistrate judge's probable cause determination regarding the search of defendant's residence is confined "to the facts that were before the magistrate judge, *i.e.*, the affidavit, and [the court does] not consider information from other portions of the record." Jones, 994 F.2d at 1055. The affidavit in support of the search warrant referenced and was based, in part, on three controlled purchases of cocaine that were stated to be recorded by audio and video devices. However, nothing in the record suggests that the magistrate judge reviewed the audio and video recordings and, that he relied upon any information contained in the recordings to make his determination. Thus, this court was limited to the four corner's of the affidavit in ruling on defendant's suppression motion.

However, "the Fourth Amendment entitles a criminal defendant to an evidentiary hearing to be held at the defendant's request when 'a defendant makes a substantial preliminary showing that a false statement ... was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause....'" U.S. v. Rivera, 524 Fed.Appx. 821, 826 (3d Cir. 2013) (citing Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674 (1978)). The Third Circuit in *Rivera*, *id*., explained

20

as follows:

> "It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a *Franks* hearing." United States v. Brown, 3 F.3d 673, 677 (3d Cir.1993). "[A] substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." Id. To make the preliminary showing required for a *Franks* hearing, the defendant must show intentional or reckless falsity on the part of the affiant, id., and "cannot rest on mere conclusory allegations ... but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements of witnesses," United States v. Yusuf, 461 F.3d 374, 383 n. 8 (3d Cir. 2006).

Thus, pursuant to Franks, 438 U.S. at 155-56, "when a warrant is obtained based upon a false statement made in a supporting affidavit, the fruits of the search warrant must be excluded if the remaining material, following the excision of the falsity, is independently insufficient to support a finding of probable cause." U.S. v. Wade, 956 F.Supp. 2d 638, 649 (W.D.Pa. 2013).

The Third Circuit has extended the right to a *Franks* hearing "to permit challenges based on factual omissions from the warrant affidavit." U.S. v. Heilman, 377 Fed.Appx. 157, 177 (3d Cir. 2010) (citation omitted). In Heilman, 377 Fed.Appx. at 177, the court addressed how the defendant must meet the threshold to obtain a *Franks* hearing and stated:

> The challenger must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument. Franks, 438 U.S. at 171, 98 S.Ct. 2674. The challenger must also provide an offer of proof or

21

give a satisfactory explanation for the absence of proof. Id. Sworn affidavits or reliable statements from witnesses are examples of offers of proof sufficient to satisfy the substantial preliminary showing. Id.; Yusuf, 461 F.3d at 383 n. 8. When demonstrating that the affiant omitted a material fact or included a false statement with the requisite *mens rea*, it is insufficient to prove the affiant acted with negligence or made an innocent mistake. Yusuf, 461 F.3d at 383. If the challenger provides sufficient proof and obtains a *Franks* hearing, the challenger must prove by a preponderance that (1) the affiant made false statements or omissions intentionally, knowingly, or with reckless disregard for the truth, and (2) such statements were material to the probable cause determination. Id. If the challenger satisfies this burden, [the court] will excise the false statements and omissions from the affidavit and assess whether the corrected affidavit establishes probable cause.

In the present case, the defendant does not merely rely upon conclusory allegations to make his substantial preliminary showing that false statements were included in the affidavit. On the contrary, he basis his claim on the audio and video recordings of the controlled drug buys arguing that they contradict the affidavit and show that false statements were made in the affidavit. In his reply brief, (Doc. 50), the defendant identified examples of alleged material misrepresentations and omissions. The defendant claims that he is entitled to a *Franks* hearing since the proof he offered reflects on veracity of the affiants. *See* Rivera, 524 Fed.Appx. at 826. The defendant states that the officers repeatedly referred to "Dennis" in their affidavit as Elbattah's cocaine supplier even though the recordings did not specify his name. The defendant indicates that he has offered evidence that the officers intentionally, knowingly, or recklessly wrote the alleged false statements to mislead the

22

judge by using his name to show his direct nexus to the drug transactions since they had access to the audio and video recordings before they executed their affidavit in support of the search warrant and knew or should have known that his name was not specified.

Nonetheless, the defendant has failed to make a substantial preliminary showing that the allegedly false statements were necessary to the finding of probable cause. *See* Heilman, 377 Fed.Appx. at 180 ("a substantial showing requires that the challenge make a "substantial preliminary showing" that a false statement was made, that statement was made knowingly, intentionally, or with reckless disregard for the truth, and is 'necessary' to the [probable cause] finding) (citation omitted).

Specifically, the defendant states that, (Doc. 50 at 4), "[a]lthough the affidavit is replete with references to the name 'Dennis', the recordings reveal that neither the CI nor Elbattah actually uttered the name 'Dennis' as stated in the affidavit." Rather, the defendant states that when Elbattah referred to his cocaine supplier, he used the pronoun "he" and not the name "Dennis." Defendant contends that this distinction "is of critical importance because the object of the affidavit was to convince the magistrate that Dennis Couvertier was a drug dealer" and to show his connection with the drug transactions detailed in the affidavit as being Elbattah's cocaine supplier. Thus, defendant states that the affidavit repeatedly mislead the magistrate to believe that

23

Elbattah specifically identified "Dennis" as his supplier when the recordings do not reflect this.

Defendant also points out the during the June 3, 2015 controlled buy the affidavit states that "[t]he CI and Elbattah set a meeting location for the American Legion on Shoemaker Street in Swoyersville. Elbattah advised the CI that 'Dennis' known to the CI and Police as being Elbattah's cocaine supplier, was going to deliver the cocaine to Elbattah and the CI at that location." Defendant states that "Dennis" was never mentioned in the recordings even though the magistrate was "led to believe that Elbattah advised the CI that 'Dennis' was going to deliver the cocaine to him." (Id. at 6). The affidavit also indicates that "Elbattah wanted the CI to come to the vehicle to meet 'Dennis' but the CI refused." However, defendant states that the audio recording did not contain any mention of the CI's interaction with Elbattah about meeting "Dennis." (Id. at 7).

With respect to the June 10, 2015 controlled buy, the affidavit states that "the CI completed a series of recorded calls between the CI and Elbattah and arranged to purchase [cocaine] from Elbattah in exchange for [money]." It also stated that the "CI inquired with Elbattah about meeting 'Dennis' and Elbattah agreed." Defendant states that this exchange was not on the recordings given to him. Next, the affidavit states that when the CI was driving to meet Elbattah at the Heffron's gas station "the CI contacted Det. Kotchik

and advised him that Elbattah was going to meet Dennis and get the cocaine that the CI wanted." Defendant states that the recording never mentioned that Elbattah was going to obtain cocaine from Dennis.

These are the full extent of the alleged false statements defendant asserts are contained in the affidavit. In summary, defendant argues that the magistrate based his probable cause finding on the following false statements in the affidavit: that Elbattah identified defendant by name, i.e., "Dennis", on several occasions despite the fact that these direct references to "Dennis" specified in the affidavit are not heard on the recordings of the controlled buys; that Elbattah was going to meet Dennis to get the cocaine to sell to the CI; and that the CI inquired with Elbattah about meeting "Dennis" and Elbattah agreed to a meeting. As such, defendant maintains that there was not sufficient probable cause to issue the search warrant without the specified inaccurate statements, particularly the references to "Dennis" attributed to Elbattah and the CI.

The court finds that even if the recordings did not directly refer to Elbattah's cocaine supplier as "Dennis" contrary to the affidavit, and even if the other stated inconsistencies existed, there was more than ample information in the 18-paragraph affidavit, (Doc. 47-1 at 4-6), showing that defendant Dennis Couvertier was Elbattah's cocaine supplier and to support the magistrate's probable cause finding authorizing the search of his

residence.

Prior to any controlled buys and prior to any recordings, the affidavit

states:

> In May of 2015, Detectives Palka and Kotchik interviewed a Confidential Informant herein referred to as CI. The CI stated that the CI could purchase cocaine from Mahmoud Elbattah. The CI stated that Elbattah's cocaine supplier was a black male by the name of Dennis. The CI stated that Dennis lived in one of two places. The CI stated that Dennis lived either above the Vaughn Street Pub, located at 347 Vaughn Street in Luzerne, or the second house behind the parking lot, located at 106 Sly Street in Luzerne. The CI stated that the CI usually provides Elbattah with the money and Elbattah will go to see Dennis to get the cocaine, then return to the CI and give the cocaine to the CI.

In fact, it was later independently verified that defendant's residence

was at 347 Rear Vaughn Street in Luzerne, PA.

Also, on May 20, 2015, prior to any recordings, the affidavit states:

> The CI placed calls and text messages to Elbattah, who stated that "he" referring to his cocaine supplier Dennis, had just already left for New York. However, Elabttah advised the CI that he already picked up the last few grams of cocaine that Dennis had left and was holding it for the CI. The CI was provided with a specific amount of US Currency and was observed meeting with Elbattah. Elbattah provided the CI with the cocaine in exchange for the US Currency.

On May 27, 2015, the affidavit states that the CI made an arrangement

with Elbattah to buy cocaine and was told to go the parking lot in the back of

the Vaughn Street Pub on Vaughn Street in Luzerne Borough. Kothcik gave

the CI money and recording devices and escorted the CI to the location where

Kotchik conducted surveillance. The affidavit then states:

26

The CI advised that when the CI arrived to the rear of the Vaughn Street Pub parking lot that Mahmoud Elbattah was standing near his blue work van he always drives. The CI advised that Elbattah walked over to the CI vehicle and the CI handed Elbattah the identifiable US Currency that was provided to the CI by Detectives. The CI advised that at the same time the CI handed Elbattah US currency. Elbattah dropped the cocaine into the CI vehicle. The CI stated that after some small talk, Elbattah left and walked up the steps to the apartment in the rear of the Vaughn Street Pub. The CI then drove away.

There was a link between Elbattah and Couvertier drawn absent any mentioned of the name "Dennis" since the May 27 drug sale occurred in the parking lot at the rear of Vaughn Street and Elbattah walked up the steps to defendant's apartment after the sale.

With respect to the June 3, 2015 controlled buy, the affidavit states:

Det. Palka witnessed a black male driving a white/silver BMW bearing PA Registration JRN9739 pull onto Hemlock Street and park. The black male appeared to be talking on a cell phone. A few seconds later, Mahmoud Elbattah exited the front door of 288 Shoemaker Street and also appeared to be talking on a cell phone. Elabttah then put the phone away and the black male also put the phone down. Elbattah then walked directly to the passenger seat of the BMW and entered. The two men drove north on Hemlock and Elbattah contacted the CI via cell phone to ask where the CI was. The CI advised that the CI was on Shoemaker and getting ready to enter the lot. Det. Kotchik watched as the CI entered the lot and Elbattah and the black male drove by in the BMW. The CI pulled into the lot and parked and Det. Kotchik established Surveillance on Church Street, allowing him to see the CI in the parking lot. Det. Palka was also able to see the CI in the lot.

Elbattah and the black male driving the vehicle drove back onto Hemlock Street and parked the vehicle. Elbattah exited the vehicle and walked over to the CI and met with the CI. The CI handed Elbattah the identifiable US Currency. Elbattah wanted

the CI to come to the vehicle to meet "Dennis" but the CI refused. Elbattah took the money and walked back to the BMW, which had pulled into the parking lot to the West side of the American Legion. A short time later Elbattah exited the vehicle and walked directly to the CI and placed the cocaine in the CI's vehicle. The CI closed then left the area. Elbattah left the area on foot and began walking back towards his residence.

The black male driving the BMW, was later identified as Dennis Couvertier. A check on Couvertier's PA Driver's license showed that he was listed as residing at Rear 347 Vaughn Street in Luzerne, PA which would be the apartment located above the Vaughn Street Bar.

Notwithstanding the minor inconsistencies found by defendant in the text of the affidavit from the recordings, the June 3 drug buy still had more than enough evidence to connect him as being Elbattah's cocaine supplier, especially since he was later positively identified as the person driving the BMW.

Regarding the June 10, 2015 controlled buy, the affidavit states, in pertinent part:

Surveillance was established on the rear of 347 Vaughn Street in Luzerne, known to Police as the residence of Dennis Couvertier, by Det. Palka. The CI was followed by Det. Kotchik to Carpenter Street, where the CI was instructed via cell phone by Elbattah to pull over. Elbattah and was already parked on Carpenter Street in Luzerne. The CI and Elbattah met outside of the CI vehicle, which was witnessed by Det. Kotchik. The CI handed Elbattah the identifiable US Currency and Elbattah instructed the CI to go to Heffron's gas station on Union Street in Luzerne and wait for him there. Elbattah returned to the vehicle he was driving, ... and then proceeded directly to 347 Vaughn Street, the Vaughn Street Pub and pulled into the back parking lot. Elbattah was then witnessed by Palka as he went up the steps to the Dennis Couvertier's apartment at 347 Rear Vaughn Street in Luzerne, PA and

28

knocked on the door, but then turned around and saw Dennis Couvertier standing in front of 106 Sly Street [the residence of defendant's brother]. Dennis Couvertier, who was accompanied by John Edwards, then walked back over to 347 Rear Vaughn Street the two men and Mahmoud Elbattah entered the apartment, with Dennis Couvertier utilizing a key to open the door. Approximately 5 minutes later, Palka witnessed Elbattah exit the apartment. Elbattah was then witnessed by Det. Kotchik proceeding to Heffron's gas station in [his vehicle], along with the same passenger as before. The CI met with Elbattah and Elbattah gave the CI the specific amount of cocaine.

Without any reference to the alleged false statement identified by defendant regarding this drug sale that "the CI contacted Det. Kotchik and advised him that Elbattah was going to meet Dennis and get the cocaine that the CI wanted", there was more than enough information for the magistrate to find probable cause that defendant supplied Elbattah with the cocaine to complete the June 10 transaction.

As stated, "in order to be eligible for a [*Franks*] hearing, the defendant is required to establish a 'substantial preliminary showing' that the challenged affidavit contained a statement that was deliberately false or showed a reckless disregard for the truth, and that such statement was material to a finding of probable cause." U.S. v. Aachen, 658 F.Supp.2d 654, 659-60 (W.D.Pa. 2009) (citation omitted). As in the *Aachen* case, Couvertier "fails to establish the necessary 'substantial preliminary showing' to warrant a *Franks* hearing since [he] cannot demonstrate that the purported [misrepresentations] are necessary to a finding of probable cause in light of the plethora of

available corroborating evidence." Id. at 660. Also, similar to *Aachen*, Couvertier "highlights minor and/or inconsequential discrepancies that are insufficient to overcome the presumption of validity with respect to the Affidavit[ ]in support of the Warrant[]." Id.

In short, even if the defendant has made a substantial showing and, even if the audio and video recordings are the types of offer of proof that must accompany a substantial showing, he has not shown that the alleged false statements were material and necessary to the probable cause finding in light of the overwhelming evidence showing his connection as Elbattah's cocaine supplier for the controlled buys at issue. As such, a *Franks* hearing is not necessary to be held in order to determine whether the officers who provided the affidavit made false statements and knew that any information was not true or recklessly disregarded its falsity. *See* Heilman, 377 Fed.Appx. at 179-80; Aachen, 658 F.Supp.2d at 659-60.

## V. CONCLUSION

Based on the foregoing, the court finds that the search warrant for the rear second floor apartment located at 347 Vaughn Street was supported by probable cause, it provided appropriate limitations in guiding the officers in the execution of the warrant and did not constitute a general or overly broad warrant. The court also concludes that the good faith exception precludes

suppression. As such, the defendant Couvertier's motion to suppress, Doc.

43), will be **DENIED**. The request for a *Franks* hearing will also be **DENIED**.

An appropriate order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 21, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2015 CRIMINAL MEMORANDA\15-173-01.wpd